**Robert PITTS, Plaintiff-Appellee,**

**v.**

**George BUSBEE, Governor of the State of Georgia, et al., Defendants-Appellants.**

**No. 74–2630.**

United States Court of Appeals, Fifth Circuit.

March 24, 1975.

---

Arthur K. Bolton, Atty. Gen. of Ga., Robert S. Stubbs, II, Executive Asst. Atty. Gen., Timothy J. Sweeney, Dorothy Y. Kirkley, Asst. Attys. Gen., Atlanta, Ga., for defendants-appellants.

Stuart E. Eizenstat, Gary N. Ackerman, Gary D. Zweifel, Michael H. Chanin, Atlanta, Ga., amici curiae for Ray Abernathy.

Hugh W. Gibert, Robert L. Schwind, Richard G. Garrett, Atlanta, Ga., amici curiae for Lee J. Roach.

Bernard Parks, George L. Howell, Carl T. Horton, Atlanta, Ga., for plaintiff-appellee.

Before THORNBERRY, RONEY and GEE, Circuit Judges.

GEE, Circuit Judge:

The background details of this voting rights case may be traced in and through the opinion of a three-judge court, 380 F.Supp. 4 (N.D.Ga.1974) and the subsequent single-judge opinion on remand, 380 F.Supp. 8 (N.D.Ga.1974), from which this appeal is taken.

Briefly stated, a 1952 Georgia local act provided for a board of three commissioners in Fulton County, each commissioner to serve a four-year term. Candidates ran at large but were required to designate the one post to which they sought election. Until 1970, election was by plurality vote. In that year, the Georgia General Assembly enacted Georgia Code § 34–1513. Its effect in Fulton County was conversion to a majority vote requirement for election. The 1970 Act was submitted to the United States Attorney General pursuant to the Voting Rights Act of 1965. No objection was filed. Then, in 1973 and 1974, the Georgia General Assembly passed two local acts changing the election plan for Fulton County commissioners. The number of commissioners was increased to seven. Three commissioners were to be elected as under previous law,[1] that is, at large and by majority vote. Four new commissioners were to be elected fron single-member districts, also by majority vote. Heeding the dictates of the 1965 Voting Rights Act, 42 U.S.C. § 1973c, the county submitted the new plan to the

---

1. The new legislation replaced some provisions of the 1952 Act, but the general effect was a restatement of those provisions as amended by 1970 statute.

United States Attorney General. The Attorney General objected, issuing an opinion pinpointing those features of the new plan he concluded offensive: numbered posts along with a majority vote requirement in the three at-large districts. He did not object to the remaining provisions of the plan. On May 29, 1974, the Board of Elections of Fulton County tried its hand at formulating an acceptable plan.

Plaintiff Pitts challenged the Board's authority to promulgate the change. By amended complaint he sought a judgment determining the validity of the '73–'74 Acts, a declaration that the 1952 Act was unconstitutional, and appropriate injunctive relief of a three-judge court. Other parties and contentions, not material here, surfaced.

The three-judge court, noting the Attorney General's objections to them, enjoined the enforcement of the 1973–74 Acts in toto. The remaining issues in the case being the status of the 1952 Act, one of local application only, and the manner of conducting the 1974 Fulton County elections, that court " . . [r]emanded to the originating judge for entry of an order setting forth an interim basis for conduct of the 1974 election of the Fulton County Board of Commissioners." 380 F.Supp., at 8.

The single-judge court viewed the status of the 1952 Act as turning on the question whether it should be "resurrected" or not, presumably from burial by the repealing clauses of the 1973–74 Acts. For reasons stated in its opinion, it declined to resurrect the Act and promulgated its own very reasonable plan, which hewed as closely as the court thought constitutional to the 1973–74 Act, and under which the 1974 elections were conducted. The court therefore never addressed the question of the intrinsic validity, under the Constitution

and the Supremacy Clause cum § 1983, of the 1952 Act. As it happens, this was unfortunate.

The single-judge court addressed the wrong issue. The effect of the Attorney General's objections was to prevent the effectiveness of the 1973–74 Acts, from the beginning and entirely. As the Supreme Court noted in Georgia v. United States:

This portion [§ 5] of the Voting Rights Act essentially *freezes* the election laws of the covered States unless a declaratory judgment is obtained in the District Court for the District of Columbia holding that a *proposed* change is without discriminatory purpose or effect. The alternative procedure of submission to the Attorney General "merely gives the covered State a rapid method of rendering a new state election law enforceable." Allen v. State Board of Elections, 393 U.S. [544] at 549, 89 S.Ct. [817] at 823, 22 L.Ed.2d 1 (Emphasis added)

411 U.S. 526 at 538, 93 S.Ct. 1702 at 1709, 36 L.Ed.2d 472 at 483.[1a] And Mr. Justice Powell, dissenting in the same case, refers to the harsh requirement of § 5 that a State "submit its legislation for *advance* review" and, in a footnote, quotes Mr. Justice Black's reference to

" . . . the power vested in federal officials under § 5 of the Act to veto state laws *in advance* of their effectiveness [which] 'distorts our constitutional structure of government.' South Carolina v. Katzenbach, 383 U.S. 301, 358, 86 S.Ct. 803, 834, 15 L.Ed.2d 769 (1966) (concurring and dissenting)." (Emphasis added).

Thus, there is simply no question that the Acts of 1973–74 never became effective *at all*, and the issue here is not the resurrection of the 1952/70 Act—it was

---

1a. But *Cf.* Georgia v. United States, 411 U.S., at 539, 93 S.Ct., at 1710, 36 L.Ed.2d, at 483: " 'The appellant's final contention is that the Attorney General's objection to the 1971 plan was untimely, and so the submitted plan should have been held by the District Court to have gone into effect. It is far from clear that this claim is not

simply moot, since the State enactment establishing the 1972 plan explicitly repealed the 1971 plan, and the objection to the 1972 plan was clearly within the statutory time period. In any event, the claim is without merit.' "

Thus the trumpet gives an uncertain sound, but "far from clear" is not a holding.

never buried.[2] The issue is its validity, one which the court below never addressed. We are unable to avoid the decision that it now must do so. *Fiat justicia, ruat coelum.*[3]

Should the court conclude the 1952 Act, as amended, is constitutional, it should vacate the order requiring interim elections. Should it determine otherwise, it should place a reasonable limit upon the terms of the commissioners elected under its interim order, such as four years or the earlier commencement of terms of office of commissioners elected under a constitutional plan enacted by the Georgia General Assembly.

Remanded.

---

2. The court indicated the Attorney General's objections to parts of the 1973–74 Act suspended only those parts, leaving the other portions (such as the repealers) to take effect. We cannot agree. To give the Attorney General what amounts to line-item veto power over state statutes would be to permit him to fashion such state laws as he chose. We decline to impute such an intent to Congress.

3. We recognize and deplore the unsettling effect which our decision must have, inevitable though it be. Nine months ago the district court, in its order of June 17, 1974, commended this controversy to the attention of the Georgia General Assembly "for a final and constitutionally acceptable remedy." No definitive action has yet been taken, save motions for this court to expedite decision of this cause—argued two and a half weeks ago. Needless to add, we have done so.