Robert (Robb) PITTS, Plaintiff-Appellee,

v.

Goodwyn CATES et al.,
Plaintiffs-Intervenors-Appellants,

v.

George D. BUSBEE, Governor of the State of Georgia, et al.,
Defendants-Appellants.

No. 75–3430.

United States Court of Appeals,
Fifth Circuit.

July 28, 1976.

Arthur K. Bolton, Atty. Gen., Dorothy Y. Kirkley, Asst. Atty. Gen., Robert S. Stubbs, II, Chief Deputy Atty. Gen., Don A. Langham, Deputy Atty. Gen., Timothy J. Sweeney, Senior Asst. Atty. Gen., Atlanta, Ga., for defendants-appellants Busbee & Forts.

Charles L. Weltner, Atlanta, Ga., for intervenor-appellant Cates.

Harold Sheats, East Point, Ga., for intervenor-appellant Brown.

John Tye Ferguson, Atlanta, Ga., for intervenor-appellant Cecil Turner as successor to Hammond.

J. O. Wyatt, Jr., pro se.

Henry D. Dodson, pro se.

Richard H. Johnston, pro se.

Bernard Parks, Atlanta, Ga., for appellee Pitts.

Before WISDOM,* COLEMAN and GEE, Circuit Judges.

PER CURIAM:

In 1952 Georgia enacted a statutory amendment which changed the composition of the Fulton County Board of Commissioners, Georgia Laws 1952, p. 2672. This change provided that the Board should consist of three commissioners, elected from the County at large, with numbered posts. Only a plurality of votes was required to win election to any post.

Georgia Code Section 34–1513 enacted in 1970 required a majority vote for election to most offices in Georgia, including the Fulton County Board. Pursuant to Section 5 of the Voting Rights Act of 1965 the new Code section was submitted to the Attorney General of the United States, who voiced no objection within the statutory sixty day period. The majority vote requirement went into effect.

In 1973–74 the Georgia legislature passed two new bills affecting the Fulton County Board, Georgia Laws 1973, p. 2462 and Georgia Laws 1974, p. 2128.[1] These Acts

---

* Judge Wisdom was a member of the panel that heard oral arguments but due to illness did not participate in this decision. The case is being decided by a quorum. 28 U.S.C., § 46(d).

1. The provisions of the 1973–74 Acts relevant to our review are:

   Section 1. The Board of Commissioners of Fulton County shall be composed of seven members who shall be elected as provided for hereinafter.

   Section 2. (a) For the purpose of electing the members of the Board of Commissioners, there shall be seven Commissioner Districts to be designated Districts 1 through 7, and one Commissioner shall be elected from each of said Districts. Commissioner Districts 1, 2 and 3 shall each consist of the entire County of Fulton. For the purpose of electing the

enlarged the Board from three to seven members. Three commissioners were to be elected at large, precisely as had theretofore been the case, but the county was also divided into four single member districts, posts four through seven. Under this statute, electors would cast votes for each of the three at-large posts and would vote on the commissioner to represent the district in which the elector resided. The only real change effected by the new bills was the creation of the four new single member districts; the three at-large commission places stood unchanged.

The 1973–74 bills were submitted to the Attorney General, who, on May 22, 1974, issued a ruling interposing *no* objection to the increase in the number from three to seven nor to the provisions for election from single-member districts. Noting that *Beer v. United States,* D.C.Dist.1974, 374 F.Supp. 363, (of which, more *post*) "makes it clear that in considering a redistricting scheme such as this a review of those aspects which remain constant, as well as those which actually reflect a change, is appropriate", the Attorney General objected to the numbered post and majority vote features of the at-large districts.

With the 1974 election imminent, the Board of Elections for Fulton County adopted a proposed redistricting plan. Under this proposal, the election would be conducted as if the 1973–74 bills were in effect, except that the majority vote requirement would be dropped with regard to the at-large commission members. Before the election, however, appellee Pitts sought an injunction to prevent implementation of the plan. Pitts argued that the Board of Elections, despite their good intentions, acted *ultra vires* in promulgating the plan, and that the change was attempted without prior approval of the Attorney General. In addition, Pitts asked for a judgment declaring the existing 1952 plan unconstitutional, and he proposed interim election plans for adoption by the District Court. One of Pitts' proposals was the precise equivalent of the plan prepared by the Board of Elections.

Before the case reached a hearing, the Court allowed intervention to incumbent Commissioner Goodwyn Cates. Cates sought: (1) a declaration that the 1973–74 changes were valid and enforceable, (2) a declaration that the Fulton County Board of Elections was without authority to proceed with its election plan, and (3) an order that the elections be conducted pursuant to the 1973–74 plan.

A three judge district court rendered its decision on June 17, 1974 (*Pitts v. Carter,* N.D.Ga.1974, 380 F.Supp. 4) holding that it had jurisdiction under 42 U.S.C. § 1973c only to enjoin implementation of election changes not in compliance with the Voting Rights Act. The Court enjoined enforce-

remaining four Commissioners, Fulton County shall be divided into Commissioner Districts as follows:

Commissioner District 4 shall consist of the following Census Tracts of such county:
Tracts 1, 2, 5, 6, 7, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101.01, 101.02, 102.01, 102.02, 114, 115 and 116.

Commissioner District 5 shall consist of the following Census Tracts of such county:
Tracts 4, 8, 9, 10, 11, 12, 13, 14, 15, 19, 20, 21, 22, 23, 24, 25, 77.01, 78.01, 79, 80, 82.01, 82.02, 83.01, 83.02, 84, 85, 86.01, 86.02, 87.01 and 87.02.

Commissioner District 6 shall consist of the following Census Tracts of such county:
Tracts 16, 17, 18, 26, 27, 28, 29, 30, 31, 32, 33, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 52, 53, 55.01, 55.02, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 67, 69, 71, 81.01 and 81.02.

Commissioner District 7 shall consist of the following Census Tracts of such county:
Tracts 66.01, 66.02, 68, 70, 72, 73, 74, 75, 76.01, 76.02, 77.02, 78.02, 103, 104, 105.01, 105.02, 106.01, 106.02, 107, 108, 109, 110, 111, 112.01, 112.02, 113.01 and 113.02.

\* \* \* \* \* \*

Section 3. (a) The initial members of the Board of Commissioners created herein shall be elected at the general election of 1974, and shall take office on the first day of January 1975, for terms of four years or until their successors are elected and qualified. Thereafter, the successors to said Commissioners shall be elected at the general election immediately preceding the expiration of their terms of office and shall take office on the first day of January immediately following their election for terms of four years or until their successors are elected and qualified.

ment of the 1973–74 plan which the Attorney General had rejected and enjoined enforcement of the Board of Elections plan, which had never been submitted for approval. The remaining issues—validity of the 1952 Act and formulation of an interim plan—were remanded to the District Court.

That same day the District Court rendered its first decision, *Pitts v. Carter*, N.D. Ga.1974, 380 F.Supp. 8. Although it did not reach the question of constitutionality, the District Court concluded that the 1952 Act should not be revived. In its place the Court established an interim plan to fill the vacuum until the legislature formulated its own plan. The interim plan corresponded precisely to the proposal which the Board of Elections had formulated: interim elections were to proceed in compliance with the rejected 1973–74 legislation except that the objectionable majority vote requirement was eliminated as to the at-large seats.

In 1974 Fulton County voters elected a Board of Commissioners under the interim plan. At the time 64.17% of the voters registered in the county were white; 35.83% were black. No black candidate had ever won a seat on the board under the 1952 plan. In 1974 two of the four commissioners chosen from single member districts were black, whereas the three at-large seats again were won by whites.

Subsequent to the election, this Court, on appeal, reviewed the District Court interim plan and remanded it for initial determination of the unanswered threshold issue: whether the 1952 Act, as amended in 1970, was unconstitutional. The District Court was directed to set reasonable limits on the terms to be served by the commissioners elected under the interim plan. *Pitts v. Busbee*, 5 Cir. 1975, 511 F.2d 126.

The District Court re-examined the 1952 Act, *Pitts v. Busbee*, N.D.Ga.1975, 395 F.Supp. 35, and held it unconstitutional. The Court also set two year terms for the interim commissioners. Instead of expiring January 1, 1979, as planned, the interim terms were rescheduled for termination on January 1, 1977.

This holding provoked requests for intervention from Commissioners Wyatt, Dodson, and Johnston, which was granted on June 20, 1975. Parties Cates, Brown, and Hammond joined in asking reimposition of the four year term. The Court denied this request.

The foundation for this prolonged litigation is the Attorney General's objection to the changes enacted by the Georgia legislature in 1973–74.

The objections articulated by the Attorney General relied on the three-judge district court decision in *Beer*. On appeal, the Supreme Court set that decision aside, *Beer v. United States*, —— U.S. ——, 96 S.Ct. 1357, 47 L.Ed.2d 629 (1976).

The Supreme Court noted that the "language of § 5 clearly provides that it applies only to proposed changes in voting procedures". *Beer, supra* at 1362. Consequently, it was held that changes could not be rejected merely because they failed to eliminate pre-existing at-large aldermanic seats in New Orleans. The pre-existing at-large aldermanic seats in New Orleans had not been mentioned in the legislation which created the single member districts but, nevertheless, they were left very much alive as a part of the election process. The Georgia legislation specifically brought forward the three at-large seats as theretofore existing. Whether the specific mention would make a difference the Supreme Court left undecided because that was not the situation presented, *Beer, supra* at 1362, n. 10. In any event, there was no change in either case.

The Supreme Court also noted that the purpose of Section 5 is to insure that changes in voting procedures do not cause minority voters to lose ground vis-a-vis other voters. Consequently, a change in procedures that "enhances the position of racial minorities with respect to their effective exercise of the electoral franchise . . . cannot violate § 5 unless the new [procedure] itself so discriminates on the basis of race or color as to violate the Constitution." *Beer, supra* at 1364.

---

**60**

■ Although the 1973–74 proposals were never implemented, their progressive impact upon minority voters can be measured by the gains, already enumerated, won by blacks under the District Court's interim plan, which differed only slightly from the rejected 1973–74 legislation. Whereas no black candidate had ever been elected to the board before, two black commissioners won election under the interim plan. Furthermore, those black commissioners were elected from two of the four new single member districts, districts identical in the interim plan and in the 1973–74 legislation. Consequently, the interim election reflects a measure of the electoral enhancement minorities would have enjoyed under the 1973–74 legislation, a substantial gain for minority voters in Fulton County. Under *Beer*, such a gain precludes a § 5 violation, unless the 1973–74 legislation otherwise violated the Constitution.

Beyond the unchanged procedure of electing three commissioners at large, the procedure for electing four Fulton County commissioners in single member districts had the explicit approval of the Attorney General.

The real question in this case, then, is whether the Attorney General would have raised any objection had the Supreme Court decision then been on the books. Obviously, the rationale supporting his reliance on the district court decision in *Beer* no longer stands intact.

■ Neither the District Court nor this Court has jurisdiction to decide whether the 1973–74 Georgia legislative Acts violate Section 5 of the Voting Rights Act, *Connor v. Waller*, 421 U.S. 656, 95 S.Ct. 2003, 44 L.Ed.2d 486 (1975).

In light of the Supreme Court decision in *Beer*, we should, and we do, vacate the Judgment of the District Court and remand the case to afford the Fulton County Commissioners an opportunity to resubmit the 1973–74 Georgia legislative Acts to the Attorney General of the United States for his further consideration. If, in view of that decision, the Attorney General should interpose no objection, all question as to the Constitutionality of the 1952 Act would be moot. No further or future elections would be held under its terms.

On the other hand, if the Attorney General should again object, then the parties have their right to file the appropriate suit in the District of Columbia.

The policy of the State of Georgia is that county officers shall serve terms of four years, Georgia Constitution, Ga.Code Ann., Section 2–7901 (1945). Consequently, the stay, heretofore entered in this Court, of that part of the District Court order shortening the terms of the Commissioners to two years will remain in effect pending the action of the Attorney General and until this controversy is resolved by the final judgment of a court of competent jurisdiction.

VACATED AND REMANDED.